IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA MANDEL, | ) | |
| | ) | Case No. |
| Plaintiff, | ) | |
| | ) | Judge |
| v. | ) | |
| | ) | Magistrate Judge |
| FIDELITY BROKERAGE SERVICES, LLC, | ) | |
| | ) | Jury Trial Demanded |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Donna Mandel, by and through her attorneys, Pedersen & Weinstein LLP, for her Complaint against Defendant, Fidelity Brokerage Services, LLC, states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action under the Americans with Disabilities Act and the Illinois Human Rights Act to challenge Defendant's unlawful discrimination against her on the basis of her age. Plaintiff also seeks relief under federal and state law for the retaliation she experienced as a result of opposing the discrimination and other illegal conduct at the company.

### JURISDICTION AND VENUE

2. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343, and principles of pendent and supplemental jurisdiction.

3. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a).

### PARTIES

4. Plaintiff, Donna Mandel ("Plaintiff"), was formerly employed by Defendant as a Relationship Manager in its Naperville, Illinois office. Plaintiff began her employment in June

2015 and was unlawfully fired in February 2020. At the time of her termination, Plaintiff was 62 years old.

5. Defendant is a privately held financial services company. Headquartered in Boston, Massachusetts, Defendant serves customers through 12 regional offices and more than 200 investment centers throughout the country. It employs over 50,000 employees and has over $11 trillion in assets under management.

6. At all times relevant to this Complaint, Defendant employed more than twenty (20) employees and was engaged in an industry affecting commerce.

## FACTUAL ALLEGATIONS

*Plaintiff's Employment With Defendant*

7. As stated above, Plaintiff began her employment with Defendant in June 2015 as a Relationship Manager. At the time of her hire, Plaintiff had over 16 years of experience working in the financial services industry and had already attained several of her securities-related licenses, including the Series 7, 63 and 65 licenses.

8. As a Relationship Manager, Plaintiff's job duties included meeting with existing and prospective clients to answer questions and discuss investment goals and opportunities, as well as to secure appointments for financial advisors with the clients, all with the ultimate goal of persuading clients to invest their money with Defendant.

9. Throughout her employment, Plaintiff discharged all duties assigned to her competently and enjoyed an excellent reputation with regard to the high quality of her work and her conscientious devotion to her job. To be sure, Plaintiff consistently ranked as a top performing Relationship Manager on both the regional and national level – all while typically working with more financial advisors than other RMs in her office – and her exemplary job

performance and initiative resulted in Defendant creating a new position of Planning Consultant modeled directly on work she performed.

10. Based on her background and qualifications, and the fact that she enjoyed the work she performed for Defendant, Plaintiff had every reason to anticipate a long and successful career with the company. Notwithstanding her impressive work performance, however, Defendant subjected Plaintiff to unlawful discrimination and retaliation and ultimately fired her unlawfully.

***Defendant Discriminated Against Plaintiff On Account Of Her Age***

11. At the outset, it should be noted that Defendant plainly has a preference for younger employees, at least in its Naperville, Illinois office where Plaintiff worked. To be sure, the workforce in that office was and still is overwhelmingly under the age of 40 and Plaintiff – who was the oldest employee in the office throughout her employment – is not aware of a single employee over the age of 50 hired during her tenure. This is not the result of chance but instead reflects Defendant's intentional decision to engineer a workforce comprised exclusively of younger workers.

12. Consistent with these employment practices, Defendant subjected Plaintiff to discrimination on account of her age by denying her a promotion for which she was well-qualified and then ultimately firing her unlawfully.

13. By way of background, Defendant created a new position of Planning Consultant modeled directly on work Plaintiff had been performing for over a year. More specifically, in late 2018, Branch Manager Jon Bippert ("Bippert") approached Plaintiff to ask her for ideas on how to help one of her assigned Financial Consultants ("FCs") expedite the financial planning process with her clients. Plaintiff ultimately developed a process where she, Plaintiff, would

3

meet with prospects and clients first to gather quantitative and qualitative information, run an analysis on their current situation, and then send notes to the FC who would then be able to make a recommendation during her very first meeting with the prospects and clients.

14. Plaintiff and her FC began to implement this process in December 2018 and in June 2019, Bippert announced to the entire office that the process was so successful that the FC had doubled her production from the previous year for the same time frame.

15. At several more meetings throughout the year, Bippert continued to praise Plaintiff's idea and the work she was doing and encouraged all FCs and Relationship Managers ("RMs") in the office to implement it, as well. Plaintiff also began training the other RMs in her office on the work she was doing with the notable exception of one particular RM, Vivian Skawinski, who was not interested in learning the work.

16. Thereafter, the FC that Plaintiff was working with was invited to an honorary Fidelity Investment Summit that year and word of what she and Plaintiff were doing spread around the country. After the summit, assistant managers and FCs across the country began reaching out to Plaintiff asking to meet and/or talk with her so she could explain the work she was doing and give advice and guidance in designing and implementing similar roles for their own offices.

17. It was based on all this that Bippert approached Plaintiff later in 2019 to tell her that Defendant was creating a position based directly on what she was doing and was rolling out the new position of Planning Consultant in early 2020 with each office across the country having at least one such position.

18. After Defendant announced in December 2019 the newly created Planning Consultant position – the job that Plaintiff herself had created and was already performing to

4

immense success – she formally applied for the role within her office. To her shock, however, Defendant passed Plaintiff over for the promotion and instead selected Vivian Skawinski ("Skawinski"), a substantially younger and less qualified employee for the role.

19. There is no question that Skawinski was less qualified (in fact she was unqualified) for the job, as evidenced not only by the fact that she had previously refused Plaintiff's offer to train her on the work (before Defendant formally created the position), but also by Skawinski's own admission during an office meeting in early February 2020 in which she said she was not "smart enough to learn the [Planning Consultant] role," that she did not know how to do the work, and she "just can't get it," or words to that effect.

20. Skawinski's admissions were consistent with how she was viewed by others in the office as it was common knowledge that financial advisors did not trust Skawinski with certain work assignments – including meeting with new prospects – and Plaintiff was also aware that financial advisors became increasingly frustrated with Skawinski's poor job performance as the Planning Consultant as it adversely affected their production and earnings. To be sure, Skawinski's job performance stood in stark contrast to Plaintiff's, who as noted above was able to double the production of one of the advisors with whom she worked while she had performed the job of Planning Consultant (albeit without the formal title and increased pay).

21. In short, there is no question that the promotion should have gone to Plaintiff. Defendant's explanation for not selecting her (it claims she did not interview well), and instead selecting someone who refused to learn the role previously and later admitted she had no idea how to do the job, is pretextual and simply defies credibility. Consistent with the demographics of the office, the only reason Defendant did not select Plaintiff for the promotion is her age.

22. Plaintiff was devasted by being denied the position, but was hopeful because

Reed Carmichael ("Carmichael"), the Assistant Branch Manager and Plaintiff's direct supervisor, told her that a second Planning Consultant position was going to be created in the Naperville office and that it would go to her once it was announced. The second Planning Consultant position was to be created – and filled by Plaintiff – in approximately late winter or early spring of 2020.

23. Before that happened, however, and as described in further detail below, Defendant abruptly fired Plaintiff on pretextual grounds. Plaintiff – who had already been denied the Planning Consultant promotion in December 2019 because of her age – was fired before the second Planning Consultant position was announced because Defendant did not want to promote her because of her age and because she had confided in Carmichael her concerns about being passed over again in favor of a younger candidate. Rather than pass her over again – knowing there was no credible way to do so given her obvious qualifications and experience – Defendant decided to simply fire her. Indeed, Bippert fired Plaintiff the day after she asked to speak to him about the upcoming Planning Consultant position.

***Defendant Retaliated Against Plaintiff For Opposing Unlawful Discrimination***

24. Following some of the discriminatory conduct described herein, Plaintiff opposed the unlawful behavior but to no avail. For example, and as noted above, Plaintiff told Assistant Branch Manager Carmichael that she feared being passed over again for the promotion to Planning Consultant in favor of a younger employee, especially since it had happened to her twice: one time in December 2019 as described above and a previous time when a younger and less qualified employee was selected for the promotion to Senior Relationship Manager instead of her.

25. In retaliation for voicing these concerns of age discrimination, and as described in

6

further detail below, Defendant fired Plaintiff shortly thereafter on pretextual grounds.

***Defendant Unlawfully Fired Plaintiff***

26. As further discrimination against her, and in retaliation for opposing age discrimination, Defendant unlawfully fired Plaintiff on February 7, 2020.

27. Days after reporting her concerns of unlawful conduct to Carmichael, Branch Manager Bippert called Plaintiff into a meeting with him and Carmichael and asked her about overtime hours she had reported in the last month. Plaintiff was surprised by the questioning but explained that she frequently worked overtime and offered to provide Bippert with an itinerary of all the work she performed on the two days he identified, especially since not all of her work was reflected on her calendar.

28. Bippert, however, inexplicably declined Plaintiff's offer and refused to let her explain the work she performed. Instead, he abruptly fired her the next day, claiming falsely – and vaguely – that she "lacked candor," or words to that effect. Bippert refused to explain what he meant by his statement, although Plaintiff presumed it related to her reporting overtime hours she worked. Bippert's claim would be more credible had he allowed Plaintiff to explain and show him the work she performed. His refusal to do so demonstrates that he did not truly believe she lacked candor or overstated her hours and instead simply wanted to create a pretextual reason to justify firing her unlawfully.

29. Given all the circumstances, it is clear that Defendant fired Plaintiff because she fully (and rightfully) expected to be promoted to a position she herself created at the firm and had expressed concerns about age discrimination.

30. As further evidence of age discrimination, Defendant replaced Plaintiff with a substantially younger and less qualified employee.

*Defendant Retaliated Against Plaintiff*
*For Reporting And Opposing Other Unlawful Activities*

31. Defendant also retaliated against Plaintiff for reporting and refusing to engage in other unlawful and unethical activities occurring in the office. More specifically, Plaintiff became aware that an advisor in the Naperville office was giving false securities and investment related information and advice to clients, thereby violating federal and state laws and regulations and breaching his fiduciary duty.

32. In approximately late January 2020, Plaintiff objected to the advisor's false statements to him directly and she reported his unlawful and unethical conduct to Carmichael. Shortly thereafter, and as described above, Defendant abruptly fired Plaintiff in retaliation for reporting her concerns.

*Defendant Violated Federal And State Wage Laws*

33. Defendant also violated the Fair Labor Standards Act and the Illinois Minimum Wage Law by firing Plaintiff for reporting overtime hours she worked. To be sure, the day before she was fired, Bippert called Plaintiff into a meeting with him and Carmichael and asked her about overtime hours she had reported in the last month. Bippert refused to let Plaintiff provide an itinerary of the work she had performed those days and instead abruptly fired her.

34. Given all the circumstances, it is clear that Defendant fired Plaintiff for reporting the fact that she worked overtime hours, as well as her reports of unlawful activities occurring within the office.

*Post-Employment Discrimination and Retaliation*

35. Following her unlawful termination, Defendant continued to subject Plaintiff to unlawful discrimination and retaliation. For example, after firing her, Defendant defamed Plaintiff and has prevented her from gaining another job by falsely reporting to the Financial

Industry Regulatory Authority ("FINRA"), the self-regulatory organization that governs brokerage firms and their licensed employees, that she was discharged for recording credit for customer appointments that did not meet the firm's definition of an appointment and for inaccurately reporting time worked on internal company time sheets.

36. These statements are false and aside from comprising additional claims of discrimination and retaliation, constitute defamation *per se.*

***Defendant Failed to Exercise Reasonable Care To Prevent and Correct Unlawful Conduct***

37. Defendant's management directed, encouraged, and participated in the above-described unlawful conduct.

38. The discrimination and retaliation described above was consistent with Defendant's standard operating procedure.

39. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.

***Plaintiff Suffered Damage***

40. As a direct and proximate result of the unlawful conduct Plaintiff experienced, she has suffered extreme emotional and mental distress.

41. Plaintiff has lost wages, compensation and benefits as a result of Defendant's unlawful conduct.

42. Plaintiff's career and reputation have been irreparably damaged as a result of Defendant's unlawful conduct.

43. Plaintiff suffered embarrassment and humiliation as a result of Defendant's unlawful conduct. Plaintiff suffered loss of enjoyment of life, inconvenience and other non-pecuniary losses as a direct result of Defendant's unlawful conduct, as well as incurring

attorneys' fees and costs.

*Punitive Damages*

44. Defendant acted and/or failed to act with malice or willfulness or reckless indifference to Plaintiff's rights. The conduct alleged herein was willful and wanton and justifies an award of punitive damages.

*Plaintiff Timely Filed A Charge Of Discrimination*

45. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff subsequently requested and received her Notice of Right to Sue on or about June 29, 2021.

46. The EEOC cross-filed Plaintiff's charge with the Illinois Department of Human Rights ("IDHR") pursuant to the work-sharing agreement between the EEOC and IDHR. On July 29, 2021, after receiving her Notice of Right to Sue from the EEOC, Plaintiff notified IDHR of the EEOC's issuance of the Right to Sue and asked IDHR to also issue her the Notice of Right to Sue so that she may pursue her state law claims.

## COUNT I

**AGE DISCRIMINATION IN VIOLATION OF ADEA**

47. Plaintiff realleges paragraphs 1 through 46 and incorporates them by reference into Count I of this Statement of Claim.

48. The Age Discrimination in Employment Act of 1967, 29 U.S.C. §621 *et seq.*, ("ADEA") makes it unlawful for an employer to fail or refuse to hire, discharge, limit, segregate, or classify its employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's age.

49. By the conduct as alleged herein, Defendant subjected Plaintiff to age discrimination in violation of ADEA.

50. Defendant's conduct constitutes willful age discrimination against Plaintiff.

## COUNT II

### RETALIATION IN VIOLATION OF ADEA

51. Plaintiff realleges paragraphs 1 through 50 and incorporates them by reference into Count II of this Statement of Claim.

52. The ADEA, specifically 29 U.S.C. §623(d), makes it unlawful for any employer to discharge or in any other manner discriminate against any employee who has opposed any practice made unlawful by the Act.

53. By its conduct as alleged herein, including further acts of discrimination and retaliation against Plaintiff, Defendant violated the ADEA.

## COUNT III

### AGE DISCRIMINATION IN VIOLATION OF THE IHRA

54. Plaintiff realleges paragraphs 1 through 53 and incorporates them by reference into Count III of this Statement of Claim.

55. The Illinois Human Rights Act, 775 ILCS 5/2-102(A) ("IHRA"), makes it unlawful to discriminate against any individual in the terms, privileges or conditions of employment on the basis of age.

56. By the conduct as alleged herein, Defendant subjected Plaintiff to age discrimination in violation of the IHRA.

57. Defendant's conduct constitutes willful age discrimination against Plaintiff.

## COUNT IV

### RETALIATION IN VIOLATION OF THE IHRA

58. Plaintiff realleges paragraphs 1 through 57 and incorporates them by reference into Count IV of this Statement of Claim.

59. The IHRA, specifically 775 ILCS 5/6-101(A), makes it unlawful to retaliate against an employee who opposes what she reasonably and in good faith believes to be unlawful discrimination or harassment, or because she has made a charge, filed a complaint, or participated in an investigation, proceeding, or hearing under the act.

60. Defendant retaliated against Plaintiff for her complaints of discrimination. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the IHRA.

## COUNT V

### RETALIATORY DISCHARGE IN VIOLATION OF ILLINOIS COMMON LAW

61. Plaintiff realleges paragraphs 1 through 60 and incorporates them by reference into Count V of this Statement of Claim.

62. At all material times, it was the clear mandate of the public policy of the State of Illinois that employers like Defendant comply with federal laws and regulations imposed upon them by the Securities Exchange Commission, including the Investment Advisers Act of 1940 (the "Advisers Act") which prohibits misstatements or misleading omissions of material facts by financial advisors in connection with the conduct of an investment advisory business and the duty imposed on investment advisors that they provide only suitable investment advice to clients.

63. At all material times, it was the clear mandate of the public policy of the State of Illinois that employers like Defendant comply with state laws and regulations imposed upon them, including the Illinois Securities Law of 1953, which prohibits investment advisors from

effectuating any transactions that are unsuitable and from employing any device, scheme or artifice to defraud or manipulate clients.

64. Plaintiff had a good faith belief that Defendant's conduct violated federal and state investment related laws and regulations.

65. Plaintiff engaged in protected activity by protesting and reporting her concerns over Defendant's unlawful violations of federal and state investment related laws and regulations.

66. Defendant retaliated against Plaintiff for her protected activity by terminating her employment. The discharge violates a clear mandate of public policy.

## COUNT VI

## VIOLATION OF ILLINOIS WHISTLEBLOWER ACT

67. Plaintiff realleges paragraphs 1 through 66 and incorporates them by reference into Count VI of this Statement of Claim.

68. The Illinois Whistleblower Act, 740 ILCS 174/20, ("IWA") provides that "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule or regulation."

69. Defendant retaliated against Plaintiff for refusing to participate in activities described herein that would result in violations of federal and/or state law, rule or regulation.

70. By its conduct, Defendant violated the IWA.

## COUNT VII

## DEFAMATION

71. Plaintiff realleges paragraphs 1 through 70 and incorporates them by reference into Count VII of this Statement of Claim.

72. Defendant made false, misleading and defamatory statements with defamatory imputation about Plaintiff to third parties. Further, the statements accuse Plaintiff of want of ability and want of integrity in her profession, and are slander and libel *per se*. The statements also served to prejudice Plaintiff in her profession and trade.

73. The statements were made with knowledge that they were false and with actual and common-law malice for the purpose of destroying Plaintiff's exemplary reputation.

74. Although damages are presumed, Plaintiff has suffered monetary loss as a result of the defamatory statements.

75. In the alternative, Defendant's statements constitute defamation per quod and Plaintiff will be able to establish special damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court find in her favor and against the Defendant as follows:

a. Declare that the acts and conduct of Defendant violate the ADEA, the Illinois Human Rights Act, and the anti-retaliation provisions of those laws;

b. Declare that the acts and conduct of Defendant violate Illinois state law.

c. Award Plaintiff the value of all compensation and benefits lost as a result of Defendant's unlawful conduct;

d. Award Plaintiff the value of all compensation and benefits she will lose in the future as a result of Defendant's unlawful conduct;

e. In the alternative to paragraph (d), reinstate Plaintiff with appropriate promotions and seniority and otherwise make Plaintiff whole;

f. Award Plaintiff compensatory damages;

14

    g.    Award Plaintiff punitive damages;

    h.    Award Plaintiff liquidated damages;

    i.    Award Plaintiff prejudgment interest;

    j.    Award Plaintiff presumed damages;

    k.    Award Plaintiff reasonable attorneys' fees, costs and disbursements; and

    l.    Award Plaintiff such other relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the Complaint.

Dated: September 21, 2021

        Respectfully submitted,

        By:    */s/Erika Pedersen*
             Attorney No. 6230020

Erika Pedersen
Jill Weinstein
**PEDERSEN & WEINSTEIN LLP**
33 N. Dearborn Street
Suite 1170
Chicago, IL 60602
(312) 322-0710
(312) 322-0717 (facsimile)